**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD (257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (253362)
*trevor@jackfitzgeraldlaw.com*
TRAN NGUYEN (301593)
*tran@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 4th Ave., Ste. 202
San Diego, CA 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
SKYE RESENDES (278511)
*skye@consumersadvocates.com*
ALEXIS M. WOOD (270200)
*alexis@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103
Phone: (619) 696-9006
Fax: (619) 564-6665

***Counsel for Plaintiffs and the Putative Class***

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LEO HARRIS, on behalf of himself, all others similarly situated and the general public,<br><br>Plaintiff,<br><br>v.<br><br>CVS PHARMACY, INC.,<br><br>Defendant. | Case No: 13-edcv-2329-AB-AGR<br><br>**RELATED CASE PLAINTIFFS LEO HARRIS AND RAYMOND ALVANDI'S REPLY IN SUPPORT OF MOTION OF TO CONSOLIDATE**<br><br>Judge: André Birotte, Jr.<br><br>Date: May 18, 2015<br>Time: 10:00 a.m.<br>Location: Courtroom 4, Spring St. |
| RAYMOND ALVANDI, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CVS PHARMACY, INC., and LANG PHARMA NUTRITION, INC.,<br><br>Defendants. | Case No: 15-cv-1503-AB-AGR |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

FACTS IN RESPONSE TO DEFENDANTS' OPPOSITION ........ 3

ARGUMENT ........ 4

I. THE AMOUNT IN CONTROVERSY IN *HARRIS* AND *ALVANDI* SHOULD BE AGGREGATED FOR CAFA PURPOSES BECAUSE THERE IS NO COLORABLE BASIS FOR SEPARATING THE ACTIONS ........ 4

A. The Product is Identical ........ 5

B. The Class is Identical ........ 6

C. CVS's Accused Absorption Claims are Materially Identical ........ 7

D. Defendants' Case Law is Unavailing ........ 8

II. DEFENDANTS SHOULD NOT BENEFIT FROM THEIR INEQUITABLE CONDUCT IN CONCEALING THE REPACKAGING UNTIL AFTER THE DEADLINE TO AMEND HAD EXPIRED ........ 9

CONCLUSION ........ 12

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Hain Celestial Group, Inc.*,
--- F. Supp. ---, 2015 WL 1744279 (N.D. Cal. Apr. 8, 2015) ........................................7

*Ang v. Bimbo Bakeries USA, Inc.*,
2014 WL 1024182 (N.D. Cal. Mar. 13, 2014)........................................................7

*Dorsey v. Rockhard Labs., LLC*,
2014 WL 4678969 (C.D. Cal. Sept. 19, 2014) ........................................................6

*Freeman v. Blue Ridge Paper Prods., Inc.*,
551 F.3d 405 (6th Cir. 2008) ..............................................................................8

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 2006) ..............................................................................10

*Kane v. Chobani, Inc.*,
2013 WL 5289253 (N.D. Cal. Sept. 19, 2013).......................................................6

*Miller v. Chirardelli Chocolate Co.*,
912 F. Supp. 2d 861 (N.D. Cal. 2012)..................................................................6

*Newell v. County of San Diego*,
2013 WL 5670943 (S.D. Cal. Oct. 15, 2013) ....................................................10, 11

*Pioneer Inv. Servs. Co. v. Brunswick Assoc's Ltd. P'Ship*,
507 U.S. 380 (1993)..............................................................................................11

*Royalty Alliance, Inc. v. Tarsadia Hotel*,
2010 WL 3339202 (S.D. Cal. Aug. 23, 2010) .........................................................8

*Seasons Homeowners Ass'n Inc. v. Richmond Am. Homes of Nevada, Inc.*,
2014 WL 2772298 (D. Nev. June 18, 2014).........................................................4, 8

*Uddin v. Radio Shack, Inc.*,
2013 WL 1767963 (C.D. Cal. Apr. 22, 2013) .......................................................10

**Rules**

Fed. R. Civ. P. 16(b)(4) ........ 10

Fed. R. Civ. P. 6(b)(1) ........ 10

Fed. R. Civ. P. 6(b)(1)(B) ........ 11

# INTRODUCTION

Defendants admit they knew at least as early as the July 4, 2014 launch date that they had repackaged CVS's Ultra CoQ10 product to slightly modified its absorption claims, from "6X Better Absorption" to "Enhanced Absorption." (*See Alvandi* Dkt. No. 16-4, Molengraff Decl. ¶ 6). Defendants also have long known that plaintiff Harris's opportunity to amend his Complaint would expire months later, in September 2014. (*Harris* Dkt. No. 28.) Rather than provide plaintiff the discovery to which he was entitled, showing that Lang and CVS were repackaging the accused product, defendants instead delayed their document productions to conceal the change. CVS's initial skimpy production of a few-hundred pages (almost entirely a document retention policy document) was then subject to numerous, drawn out meet-and-confer conferences. By the time Harris finally obtained, through a series of successful motions to compel, defendants' full productions—approximately 10,000 pages from CVS in November 2014, and 162,000 pages from Lang in March 2015—he was out of time to amend his Complaint to expressly include the product's revised "Enhanced Absorption" packaging.

Defendants' strategy of delay was effective. Given that CVS launched the new packaging iteration in July 2014, defendants had to have known months beforehand that the repackaging was forthcoming. Lang's March 2015 production finally contained documentation that confirms this. (Fitzgerald Reply Decl. ¶ 2.[1]) But *plaintiffs* did not learn about it until their counsel spotted it in a CVS store in December 2014.

Soon after plaintiffs' counsel had an independent laboratory test the repackaged product, Alvandi filed his case on March 2, 2015. Had defendants timely completed their productions, rather than force Harris to file motion after motion to compel such productions, Harris would have learned of the repackaging in time to amend his Complaint. Defendants should not benefit from their concealment. Had plaintiff timely learned of the repackaging, defendants likely would have stipulated to an amendment, but even if they had not, a Court

---

[1] CVS's production in November 2014 also contained a single testing report with a vague reference to "CVS Enhanced." (*Id.*)

Order granting leave to amend would have been warranted under Rule 15's permissive standard. Fed. R. Civ. P. 15(a)(2).

Defendants contend that plaintiffs' counsel *chose* to file separate cases, which purportedly constitutes an implicit acknowledgment that the identical Lang-supplied CoQ10 sold by CVS in two different packages with high absorption claims are somehow sufficiently different to dictate separate suits. Opp. at 6. In reality, counsel was procedurally bound to file a new suit regarding the repackaged version of the defective Lang-supplied CoQ10 softgels; but as reflected in the *Alvandi* civil cover sheet asserting that the case is related to *Harris* (*Alvandi* Dkt. No. 1 at 3), and in plaintiffs' present motion to consolidate, plaintiffs have *always* considered these "separate" cases to be materially identical, and properly merged.

Defendants also argue that plaintiffs' consolidation motion is nothing more than a tactic "to prevent the dismissal of the *Alvandi* action," Opp. at 1. In doing so, they note that "[o]n April 3, 2015, Plaintiff counsel was informed that the total nationwide sales of the product at issue in *Alvandi* was less than $200,000," *id.*, suggesting that plaintiff and his counsel perhaps acted frivolously or otherwise improperly in failing to dismiss the action. (*See also Alvandi* Dkt. No. 16-1, Defendants' Motion to Dismiss at 1-2 & n.1.) This argument is incorrect—and improper.

What defendants refer to is the April 3, 2015 Early Neutral Evaluation conference that took place in the similar matter pending in the Southern District of California, *Cortina v. Wal-Mart Stores, Inc. et al.*, No. 13-cv-2054-BAS-DHB (S.D. Cal.). And what they mean is that they conveyed information to the Magistrate Judge, for settlement purposes, which the judge then conveyed to the plaintiff in that case, which was entirely by word-of-mouth, with no verification or other supporting documents or declaration. And the information was wholly unspecific, merely a counsel representation as to sales. (Fitzgerald Reply Decl. ¶ 3.) Moreover, the ENE was a confidential settlement conference mediated by the Honorable Magistrate Judge David H. Bartick, who expressly ordered that "[a]ll conference discussions will be informal, off the record, privileged and confidential." (*Id.* Ex. 1 at 2.) Accordingly, defendants' reliance on such communications violates Judge Bartick's Order.

Defendants also ignore the parties' meet-and-confer communications. As set forth in plaintiffs' notice of this motion, plaintiffs' counsel advised defendants on March 30 that, plaintiffs would, consistent with Local Rule 7-3, file the motion seven days later, on April 6. Defendants' counsel asked for a week delay to discuss possible consolidation with defendants. Plaintiffs agreed to hold off on filing, but defendants never responded, and on subsequent phone calls said they were still considering stipulating to the consolidation. (*Id*. ¶ 6.) Defendants then sent a late-night email on April 16, saying for the first time that they intended to move to dismiss the case. (*See* Declaration of Sarah E. Johnston in Support of Defendants' Motion to Dismiss, *Alvandi* Dkt. No. 16-3, Ex. A.) Plaintiff's consolidation motion had long been written and was just waiting on defendants' response as to stipulating to consolidation (consistent with their tactic of delay, defendants dragged out their response for as long as possible, as they likely were preparing instead their motion to dismiss *Alvandi*). Plaintiffs therefore filed their consolidation motion on April 17, the next day.

At bottom, these cases are one in the same: They involve the same product, the same class, the same alleged defects and legal claims, materially the same product claim of some type of better, increased absorption, and the same evidence and proofs. Even setting aside the equities as to defendants' concealment of their packaging change, as a legal matter the Court can and should aggregate the purported $29,000 in sales of the Lang-supplied VESIsorb CoQ10 softgels in "Enhanced" packaging, with the millions of dollars of sales in "Ultra" packaging, such that consolidating and effectively merging *Alvandi* and *Harris* for all purposes is proper under the Class Action Fairness Act.

**<u>FACTS IN RESPONSE TO DEFENDANTS' OPPOSITION</u>**

Harris filed his action against CVS challenging its Lang-supplied VESIsorb CoQ10 product, CVS Ultra CoQ10, on December 18, 2013. On April 10, 2014, the Court issued a Scheduling Order setting a September 15, 2015 deadline to amend pleadings to add claims or parties. (*Harris* Dkt. No. 28.)

Harris served CVS with discovery requests on March 6, 2014, with CVS's production due, after extension, by May 9, on which date it purported to complete its production, comprised of 105 substantive pages and a 273-page document retention policy.

Harris also served Lang with a document subpoena on April 23, 2014. Lang responded with a "rolling" production over the next four months, through August 2014, when it asserted that its production was complete, comprised of 658 pages (although 165 pages were just copies of articles from publicly-available journals).

Following extensive meet-and-confer efforts in which defendants claimed their searches and document productions were undertaken in good faith and complete, plaintiff filed motions to compel against both CVS and Lang, and Judge Rosenberg ordered substantial additional searches and responses from defendants. As a result, in November 2014, CVS produced 9,601 additional pages, and in March 2015, Lang produced 162,326 additional pages. Unlike the documents defendants voluntarily produced, the documents that Lang was *ordered* to produce finally disclosed their repackaging efforts of many months earlier. (Fitzgerald Reply Decl. ¶ 2.)

## ARGUMENT

### I. THE AMOUNT IN CONTROVERSY IN *HARRIS* AND *ALVANDI* SHOULD BE AGGREGATED FOR CAFA PURPOSES BECAUSE THERE IS NO COLORABLE BASIS FOR SEPARATING THE ACTIONS

Defendants admit that if the claims in two ostensibly separate actions are on behalf of the same class, they may be aggregated for purposes of meeting the CAFA jurisdictional minimum under 28 U.S.C. § 1332(d)(2), notwithstanding that they may have been originally filed as "separate" cases. Opp. at 3-6; *see generally Seasons Homeowners Ass'n Inc. v. Richmond Am. Homes of Nevada, Inc.*, 2014 WL 2772298, at *3 (D. Nev. June 18, 2014) (Section 1332(d)(2) "provide[s] that in any class action the claims of the individual members within that class shall be aggregated, [which] is unlike the situation . . . where . . . two cases feature distinctive classes related only by the nature of the alleged harm.").

There is no colorable basis for separating the *Harris* and *Alvandi* actions because they involve the same product, class, claims, and proofs. CVS's repackaging makes little difference because, while some of the specifics may differ, the overall message is materially identical, namely, that the product offers better, increased absorption. Moreover, plaintiff alleges that the CVS VESIsorb CoQ10 softgels—whether in blue "Ultra" or black "Enhanced" packaging—fail to timely rupture and adequately dissolve, such that they are simply ineffective. Thus, the *theory* underlying plaintiffs' allegations in each action, whether supporting false advertising claims or warranty breaches due to the product's defects, is also identical.

**A. The Product is Identical**

There can be no reasonable dispute that the Lang-supplied VESIsorb CoQ10 softgels are identical regardless of whether they are in blue "Ultra" packaging or black "Enhanced" packaging. Not only did Lang's counsel confirm that Lang only makes and supplies one CoQ10 product to retailers (just with different packaging) (Fitzgerald Decl. Ex. 1, Jan. 27, 2015 Hrg. Tr. at 3-4), but during the October 7, 2014 hearing on Harris's motion to compel CVS, more than three months after CVS began selling Enhanced CoQ10 in July 2014, its California counsel represented to the Court that CVS has only *two* store-brand CoQ10 products: the Lang-supplied VESIsorb product, and an unrelated oil-based "regular" CoQ10 product:

> THE COURT: Okay. So, then, have you identified which store-brand CoQ10 products CVS purchased or considered purchasing? Obviously, the purchased one we know about, but the ones that you considered purchasing.
>
> MR. RISING: I'm aware of the Ultra product, and I'm aware of sort of a regular CoQ10 product that are store brands.[[2]] I'm not aware of any others.

---

[2] Counsel's reference to "a regular CoQ10 product" was not regarding Lang-supplied CVS Enhanced CoQ10, but rather a completely unrelated, "regular" oil-based CoQ10 product that CVS does not obtain from Lang, and which makes no claim to any sort of enhanced absorption properties.

(*Id.* Ex. 2, Oct. 7, 2014 Hrg. Tr. at 29.)

If counsel was not misrepresenting facts to the Court, the only possible conclusion is that defendants and their counsel, like plaintiffs, understand and have always understood that CVS Ultra and CVS Enhanced CoQ10 are the identical product, simply with different packaging, and for purposes of the *Harris* case, are one and the same.[3]

**B. The Class is Identical**

Here, "the class members *are* essentially the same group of persons." *See* Opp. at 4 (emphasis added, citation omitted). That is, the class is comprised of all persons who purchased Lang-supplied VESIsorb CoQ10 softgels from CVS since July 2012, when it first went on sale. True, some class members have only purchased the Lang-supplied VESIsorb CoQ10 softgels in the blue "Ultra" packaging, and some only in the black "Enhanced" packaging, while others may have purchased both; but this is no different than any class action that involves a line of related products where any class member may have purchased only some of those products. It is well-settled that "a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar [to those purchased]." *Kane v. Chobani, Inc.*, 2013 WL 5289253, at *10 (N.D. Cal. Sept. 19, 2013) ((citing *Miller v. Chirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012) (collecting cases))).

Thus, for example, a few months ago, Judge Pregerson denied a defendant's motion to dismiss portions of a class action complaint that challenged "iterations of RHW[[4]] different from the version that Plaintiff purchased," noting that it "appears that Plaintiff's claims are sufficiently similar to those of putative class members who purchased a different iteration of the RHW product," *Dorsey v. Rockhard Labs., LLC*, 2014 WL 4678969, at *3-4 (C.D. Cal. Sept. 19, 2014) (citation omitted); *see also Anderson v. Hain Celestial Group, Inc.*, --- F.

---

[3] Counsel's omission of the repackaging in response to Judge Rosenberg's inquiry was nevertheless misleading.

[4] Referring to Rockhard Weekend, the male sexual enhancement product at issue in the case.

Supp. ---, 2015 WL 1744279, at *3-4 (N.D. Cal. Apr. 8, 2015) (denying motion to dismiss claims regarding "substantially similar" products plaintiff did not purchase where she "alleged facts to show that the common misleading feature of both purchased and unpurchased similar products can be adjudged without a 'context-specific analysis of each product's label'" (quoting *Ang v. Bimbo Bakeries USA, Inc.*, 2014 WL 1024182, at *28-29 (N.D. Cal. Mar. 13, 2014))).

### C. CVS's Accused Absorption Claims are Materially Identical

CVS primarily relies on its repackaging the Lang-supplied VESISorb CoQ10 softgels in July 2014 to argue that there is a "colorable basis" for separating the lawsuits, asserting that "the products make different statements on their labels," Opp. at 1, so that the "alleged misrepresentations on the product labeling and packaging . . . are different for each product." *Id.* at 5. But the heart of plaintiffs' claims are that CVS's product claim of some type of higher, increased, better absorption, is the same, regardless of the two different packages in which defendants have place the identical CoQ10 softgels. And overall, the similarities in the old and new packaging are far greater than the immaterial differences:

<u>CVS Ultra CoQ10</u>

• "6X Better Absorption"

• "Heart & Muscle Health"

• "Beneficial for people taking cholesterol-lowering statin drugs"

<u>CVS Enhanced CoQ10</u>

• "Enhanced Absorption"

• "Heart & Muscle Health"

• "Beneficial for those taking cholesterol-lowering statin drugs"

• "Supports heart & vascular health"

• "Promotes healthy blood pressure levels"

• "Important for energy production"

• "CVS/pharmacy Enhanced Absorption Formula CoQ-10 100mg may help support heart and vascular health, as well as may help support healthy blood pressure levels with an enhanced absorption formula."

• "Compare to Qunol Ultra CoQ-10"

Despite some differences in details, plaintiffs' theory of liability is identical regardless of which package is considered. That is, if plaintiffs are correct that the Lang-supplied VESIsorb CoQ10 softgels do not timely rupture or adequately dissolve so that they provide the consumer with *no* benefit, it matters little whether CVS has represented that the product offers "6X Better Absorption," or "Enhanced Absorption," or any other words conveying the idea of higher absorption. Both claims of some type of increased, better absorption are false for the same simple reason—the product offers *no* absorption. For the same reason, any claim that the product offers benefits, for example to heart health, are also false.

**D. Defendants' Case Law is Unavailing**

That this is a proper case in which to aggregate the amounts in controversy, such that consolidation is proper, is demonstrable by comparing the facts and claims here with those in the cases on which defendants rely.

In *Seasons Homeowners Ass'n*, the court noted that that two cases at issue were "distinctive," and "related only by the nature of the alleged harm." 2014 WL 272298, at *3. Similarly, in *Royalty Alliance, Inc. v. Tarsadia Hotel*, 2010 WL 3339202 (S.D. Cal. Aug. 23, 2010), the proposed classes differed: one was comprised of individuals who purchased a condominium at the Hard Rock Hotel San Diego, while the other was comprised of individuals who attempted to purchase a condo but were unable to complete the purchase. Moreover, the legal claims asserted in the actions differed significantly. *Id.* at *3.

Instead, the circumstances here are far more like those in *Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405 (6th Cir. 2008), where the Sixth Circuit allowed the aggregation of five separate class actions, each individually under the $5 million threshold, in order to reach the jurisdictional amount. *Id.* at 407. There, the plaintiffs had originally filed a single class action, but divided it into separate suits covering distinct time periods. But the suits were against the same defendants and featured the same claims. *Id.* at 406. This case is like *Freeman* because *Harris* and *Alvandi* involve the same product being sold by the same defendant, just during different time periods and in a different iteration of packaging.

## II. DEFENDANTS SHOULD NOT BENEFIT FROM THEIR INEQUITABLE CONDUCT IN CONCEALING THE REPACKAGING UNTIL AFTER THE DEADLINE TO AMEND HAD EXPIRED

Defendants claim that plaintiffs' counsel "in their judgment concluded that the classes were sufficiently distinct so as to merit the filing of separate actions." Opp. at 6. This is wrong.

Rather, plaintiffs' counsel filed a new action concerning CVS Enhanced CoQ10 because when it first learned that CVS had re-packaged CVS Ultra CoQ10 as challenged in *Harris*, the time to amend the pleadings had already expired. Had Harris timely learned of CVS's repackaging, he would have simply moved to amend his Complaint to clarify that the suit also includes the same product in its revised packaging. And Harris and his counsel *would* have timely learned about CVS Enhanced CoQ10 if CVS and Lang had not obstructed and delayed proper discovery by withholding nearly their entire document productions until after the deadline to amend had expired, and then continuing to misrepresent facts to the Court even after the expiration (for example, if counsel had been forthcoming with Judge Rosenberg in October, plaintiff would have learned of the repackaging then and been just a few weeks past the amendment deadline).

In CVS's case, plaintiff served discovery requests on March 6, 2014, and CVS purported to complete its document production on May 9, with 378 pages produced, 273 of them a document retention policy. When plaintiff moved to compel further production, CVS eventually admitted it had never searched its primary electronic database. When it was ordered to do so, CVS produced more than 9,600 additional pages—but only on November 10, 2014, two months after plaintiff's deadline to amend had expired.

Lang's behavior was even worse. In response to plaintiff's April 2014 subpoena, Lang made a "rolling" production over the next several months, purporting to be completed in August 2014, with a production of 658 total pages. Again, plaintiff moved to compel compliance, and Judge Rosenberg ordered a further search and production. *See Harris v. Lang Pharma Nutrition, Inc.*, No. 14-mc-1154-UA-AGR (C.D. Cal.), Dkt. No. 27 (January 27, 2015 Order Granting in Part and Denying in Part Motion to Compel). After its time to produce

was extended (*see id.* Dkt. No. 35), in late March 2015—more than a year after plaintiff served his subpoena—Lang produced 162,330 new pages, comprising 99.6% of its total production.

Had CVS and Lang timely satisfied their discovery obligations—in both cases it eventually became clear that their initial productions were just the result of a few employees manually searching their files without much rhyme or reason, while defendants inexplicably failed to search accessible electronic databases using search terms and custodians—Harris likely would have discovered earlier their plan to repackage the product with slightly different increased absorption product claims in order to try to avoid continuing liability for sales of the identical product claiming a more specific "6X Better Absorption" claim. And Harris would have sought defendants' stipulation, or otherwise moved to amend his Complaint before the September 15, 2014 deadline. Because of defendants' obstruction and concealment, however, and plaintiffs as a result having only discovered the repackaging much later, the only option was to file a new, related case, and to seek consolidation, just as plaintiffs Harris and Alvandi have done.

Significantly, as an alternative ground for merging the claims, the Court could *sua sponte* extend Harris's deadline to amend *nunc pro tunc* and order Harris to file an Amended Complaint, rather than a Consolidated Complaint.

Under Rule 16(b)(4), a schedule may be modified for good cause, with the judge's consent. Fed. R. Civ. P. 16(b)(4). Rule 16(b)(4)'s "good cause" standard "primarily considers the diligence of the party seeking amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 2006). Thus, "the focus of the court's inquiry is upon the moving party's explanation for failure to timely move for leave to amend." *Uddin v. Radio Shack, Inc.*, 2013 WL 1767963, at *2 (C.D. Cal. Apr. 22, 2013). Moreover, "[t]his good-cause standard comports with Rule 6(b)(1), which provides: 'When an act may or must be done within a specified time, the court may, for good cause, extend time . . . .'" *Newell v. County of San Diego*, 2013 WL 5670943, at *3 (S.D. Cal. Oct. 15, 2013) (quoting Fed. R. Civ. P. 6(b)(1)). But Rule 6 further provides that "if a motion to extend is made *after* a deadline has

expired, the motion to extend may only be granted 'if the party failed to act because of excusable neglect.'" *Id.* (quoting Fed. R. Civ. P. 6(b)(1)(B)). As a result, "if a party wishes to seek leave to amend its pleadings after the deadline to do so has passed, the party must demonstrate both good cause for modifying the scheduling order, in addition to demonstrating excusable neglect for having missed the deadline." *Id.* (citations omitted).

The Supreme Court has established a four-part test for determining whether there has been excusable neglect: (1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assoc's Ltd. P'Ship*, 507 U.S. 380, 395 (1993). "The *Pioneer* test requires a flexible approach whereby no one factor is more significant than any other," and courts should not "erect[] a rigid barrier against late filings attributable in any degree to the movant's negligence." *Newell*, 2013 WL 5670943, at *3 (citing 507 U.S. at 395 n.14).

Applying the *Pioneer* factors, here there is excusable neglect. First, there is absolutely no prejudice since Judge Rosenberg expressly ordered discovery in *Harris* to include all Lang-supplied CoQ10 versions for any retailer, and all store-brand CoQ10 products from CVS, which includes the repackaged "Enhanced" version. (*See Harris* Dkt. No. 69 at 1, ¶ 3; *Harris v. Lang Pharma Nutrition, Inc.*, No. 14-mc-1154-UA-AGR (C.D. Cal.), Dkt. No. 27 at 2.) And depositions in *Harris* have not even commenced (they are being scheduled now). Thus, as discussed in plaintiffs' opening brief, adding the CVS Enhanced packaging to the *Harris* action will not require any substantial additional discovery.

For the same reason, the potential impact on judicial proceedings is negligible.

Third, the delay was not "within the reasonable control of movant," because defendants improperly concealed the repackaging until after the amendment deadline had expired.

Finally, movants' conduct has been in good faith. As soon as their counsel learned of the product, they had it tested. When the testing showed that the defects remained, they filed *Alvandi* right away, sought to have it related to *Harris*, sought defendants' stipulation to

consolidation, and when defendants finally indicated that they instead would seek dismissal of *Alvandi*, immediately filed the consolidation motion.[5]

**CONCLUSION**

Consolidation is sensible in light of the evidence CVS submits showing California sales of $2,872.00, and nationwide sales apparently exactly 10 times the amount to the penny, $28,720.00. (*Alvandi* Dkt. No. 16-4, Mollengraff Decl. ¶¶ 7-8.)[6] If the action is dismissed, plaintiff will be forced to re-file in state court, where a new judge will be assigned, and the parties will undertake new motion practice and new discovery. As set forth in plaintiffs' opening brief, this is totally unnecessary and inefficient given the extensive discovery already had in *Harris* concerning the identical product. Moreover, separating the actions presents opportunities for inconsistent rulings and judgments, despite that they involve the identical product, defendants, class, claims, and proofs.

Given the alleged minimal sales of CVS Enhanced CoQ10, it is far more preferable to simply wrap the repackaged product into the case, which is far advanced in discovering and litigating the merits of plaintiffs' claims that the Lang-supplied VESIsorb CoQ10 softgels—whether in CVS's blue "Ultra" box or black "Enhanced" CVS packaging—are defective and falsely advertised.

Accordingly, plaintiffs respectfully request the Court to consolidate their actions, or issue any further relief the Court determines is necessary and appropriate.

---

[5] Plaintiffs recognize that they cannot seek relief under Rule 16 in a reply, and if necessary will file a new motion to extend the scheduling order and amend the Complaint. But for the sake of efficiency and conserving judicial resources, to avoid otherwise unnecessary further motion practice, and because the issues and the parties' arguments regarding consolidation are essentially the same as would be raised in such a Rule 16 motion, plaintiffs respectfully suggest that it is well within the Court's inherent power to control its docket to *sua sponte* amend the scheduling order *nunc pro tunc* to enable the filing of amended pleading.

[6] It is curious that CVS's nationwide sales were *exactly* 10 times, to the penny, its California sales for the 241 days CVS had been selling Enhanced CoQ10 through March 2, 2015—especially given that $28,720, or $2,872 is not divisible to a whole number by the "$21.99 per container" price (*id.* ¶ 6).

Dated: May 1, 2015

Respectfully submitted,

/s/ Jack Fitzgerald

**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN
*trevor@jackfitzgeraldlaw.com*
TRAN NGUYEN
*tran@jackfitzgeraldlaw.com*
3636 4th Ave., Ste. 202
San Diego, CA 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON
*ron@consumersadvocates.com*
SKYE RESENDES
*skye@consumersadvocates.com*
ALEXIS M. WOOD
*alexis@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103
Phone: (619) 696-9006
Fax: (619) 564-6665

***Counsel for Plaintiffs and the Putative Class***