**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD (257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (253362)
*trevor@jackfitzgeraldlaw.com*
TRAN NGUYEN (301593)
*tran@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 4th Ave., Ste. 202
San Diego, CA 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
SKYE RESENDES (278511)
*skye@consumersadvocates.com*
ALEXIS M. WOOD (270200)
*alexis@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103
Phone: (619) 696-9006
Fax: (619) 564-6665

***Counsel for Plaintiffs and the Putative Class***

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEO HARRIS, on behalf of himself, all others similarly situated and the general public,<br><br>Plaintiff,<br><br>v.<br><br>CVS PHARMACY, INC.,<br><br>Defendant. | Case No: 13-edcv-2329-AB-AGR<br><br>**OPPOSITION TO CVS'S MOTION TO DISMISS**<br><br>Judge:   André Birotte, Jr.<br>Date:    July 6, 2015<br>Time:    10:00 a.m.<br>Ct. Room: 4 |

*Harris v. CVS Pharmacy, Inc.*, No. 13-edcv-2329-AB-AGR
OPPOSITION TO CVS'S MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................ii

INTRODUCTION..................................................................................................1

FACTS .................................................................................................................1

ARGUMENT .......................................................................................................1

I.      CVS INVOKES THE WRONG LEGAL STANDARD....................................1

II.     CVS HAS NOT SHOWN TO A LEGAL CERTAINTY THAT THE
        AMOUNT IN CONTROVERSY IS LESS THAN $5 MILLION ....................3

        A.      Compensatory Damages....................................................................3

        B.      Punitive Damages.............................................................................4

        C.      Attorneys' Fees ...............................................................................5

        D.      Injunctive Relief .............................................................................6

        E.      The Court Must Consider the Rhode Island Unfair Trade
                Practices Act When Considering the Amount in Controversy ................7

III.    CVS'S MOTION FAILS EVEN UNDER A PREPONDERANCE
        STANDARD ..................................................................................................9

IV.     IF THE COURT IS NOT SATISFIED THAT THE
        JURISDICTIONAL MINIMUM IS SATISFIED, IT SHOULD
        PERMIT PLAINTIFF TO TAKE DISCOVERY GIVEN THE
        EXTREME PREJUDICE THIS MOTION WILL CAUSE IF
        GRANTED ....................................................................................................9

V.      THE COURT SHOULD PROVIDE GUIDANCE ON THE
        REQUIREMENTS OF LOCAL RULE 7-3....................................................11

CONCLUSION ......................................................................................................15

i

# TABLE OF AUTHORITIES

**Cases**

*Abrego Abrego v. The Dow Chemical Co.*,
    443 F.3d 676 (9th Cir. 2006) ...................................................................2

*Blumer v. Acu-Gen Biolabs, Inc.*,
    638 F. Supp. 2d 81 (D. Mass. 2009) ......................................................8

*BMW of N. Am., Inc. v. Gore*,
    517 U.S. 559 (1996) .................................................................................5

*Bohn v. Pharmavite, LLC*,
    2013 WL 4517173 (C.D .Cal. Feb. 5, 2013) ......................................12

*Brazil v. Dole Food Co., Inc.*,
    2013 WL 5312418 (N.D. Cal. Sept. 23, 2013) ....................................8

*Bruno v. Eckhart Corp.*,
    280 F.R.D. 540 (C.D. Cal. 2012) ...........................................................8

*Budget Rent-A-Car v. Higashiguchi*,
    109 F.3d 1471 (9th Cir. 1997) ...............................................................2

*Chavers v. Fleet Bank (RI), N.A.*,
    844 A.2d 666 (R.I. 2004) ........................................................................3

*Cohn v. Petsmart, Inc.*,
    281 F.3d 837 (9th Cir. 2002) .................................................................6

*Crum v. Circus Circus Enters.*,
    231 F.3d 1129 (9th Cir. 2000) ...............................................................2

*Cunningham Charter Corp. v. Learjet, Inc.*,
    592 F.3d 805 (7th Cir. 2010) .................................................................2

*Dart Cherokee Basin Operating Co. v. Owens*,
    135 S. Ct. 547 (2014) ..............................................................................2

*Deaver v. BBVA Compass Consulting & Benefits, Inc.*,
    2014 WL 2199645 (N.D. Cal. May 27, 2014) ....................................6

ii

*Exxon Shipping Co. v. Baker*,
    554 U.S. 471 (2008)................................................................................5

*Frederico v. Home Depot*,
    507 F.3d 188 (3d Cir. 2007)..................................................................6

*Galt G/S v. JSS Scandinavia*,
    142 F.3d 1150 (9th Cir. 1998) ..............................................................5

*Gaus v. Miles, Inc.*,
    980 F.2d 564 (9th Cir. 1992) ................................................................2

*Gibson v. Chrysler Corp.*,
    261 F.3d 927 (9th Cir. 2001) ...........................................................5, 11

*Hargis v. Access Capital Funding, LLC*,
    674 F.3d 783 (9th Cir. 2012) ................................................................8

*Hoffman v. DSE Healthcare Solutions, LLC*,
    2014 WL 1155472 (D.N.J. Mar. 21, 2014)...........................................7

*Horton v. Liberty Mut. Ins. Co.*,
    367 U.S. 348 (1961)..............................................................................2

*Ibarra v. Manheim Invs., Inc.*,
    775 F.3d 1193 (9th Cir. 2015) ..............................................................2

*In re Ford Motor Co.*,
    264 F.3d 952 (9th Cir. 2001) ................................................................6

*In re iPhone 4s Consumer Litig.*,
    2013 WL 3829653 (N.D. Cal. July 23, 2013)......................................8

*Int'l Padi, Inc. v. Diverlink*,
    2005 WL 1635347 (9th Cir. July 13, 2005)..........................................6

*Johnson v. Famous Dave's of Am., Inc.*,
    2012 WL 164875 (E.D. Pa. May 10, 2012)..........................................8

*Land v. Dollar*,
    330 U.S. 731 (1947)............................................................................10

*Harris v. CVS Pharmacy, Inc.*, No. 13-edcv-2329-AB-AGR
OPPOSITION TO CVS'S MOTION TO DISMISS

*Lenell v. Advanced Mining Tech., Inc.*,
   2014 WL 7008609 (E.D. Pa. Dec. 11, 2014)...................................................5, 8

*Lewis v. Ford Motor Co.*,
   610 F. Supp. 2d 476 (W.D. Pa. 2009).......................................................4

*Lowdermilk v. United States Bank Nat'l Ass'n*,
   479 F.3d 994 (9th Cir. 2007) .................................................................1

*Majd-Pour v. Georgiana Cmty. Hosp., Inc.*,
   724 F.2d 901 (11th Cir. 1984) ...............................................................10

*Manier v. Medtech Prods., Inc.*,
   2014 WL 1609655 (S.D. Cal. Apr. 22, 2014)..........................................5

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) .................................................................7

*Park v. Ford Motor Co.*,
   844 A.2d 687 (R.I. 2004).........................................................................4

*Pedroza v. Petsmart, Inc.*,
   2012 WL 9507910 (C.D. Cal. June 14, 2012) .......................................12

*Pretka v. Kolter City Plaza II, Inc.*,
   608 F.3d 744 (11th Cir. 2010) ...............................................................10

*Rea v. Michaels Stores, Inc.*,
   742 F.3d 1234 (9th Cir. 2014) ...............................................................2

*Richard C. Young & Co., Ltd. v. Leventhal*,
   389 F.3d 1 (1st Cir. 2004)......................................................................6

*Ridder Bros., Inc. v. Blethen*,
   142 F.2d 395 (9th Cir. 1944) .................................................................6

*Rivera-Flores v. Puerto Rico Tel. Co.*,
   64 F.3d 742 (1st Cir. 1995)....................................................................10

*Rodriguez v. AT&T Mobility Servs. LLC*,
   728 F.3d 975 (9th Cir. 2013) .................................................................2

iv

*Roth v. Comerica Bank*,
   799 F. Supp. 2d 1107 (C.D. Cal. 2010) ...................................................2

*Singer v. Live Nation Worldwide, Inc.*,
   2012 WL 123146 (C.D. Cal. Jan. 13, 2012) .........................................13

*Singer v. State Farm Mut. Auto Ins. Co.*,
   116 F.3d 373 (9th Cir. 1997) ................................................................2

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
   303 U.S. 283 (1938) ...............................................................................2

*Stevenson v. Dollar Tree Stores, Inc.*,
   2011 WL 4928753 (E.D. Cal. Oct. 17, 2011) ........................................6

*Tompkins v. Basic Research LLC*,
   2008 WL 1808316 (E.D. Cal. Apr. 22, 2008) ...................................6, 10

*Won Kyung Hwang v. Ohso Clean, Inc.*,
   2013 WL 1632697 (N.D. Cal. Apr. 16, 2013) ........................................8


**Statutes**

15 U.S.C. § 2310(d)(2) ...................................................................................5

15 U.S.C. §§ 2301 *et seq.* ..............................................................................1

28 U.S.C. § 1332(d)(2)(A) .............................................................................7

28 U.S.C. § 1446 ............................................................................................2

R.I. Gen. L. § 6-13.1-5.2(a) .......................................................................3, 4

R.I. Gen. L. § 6-13.1-5.2(b) ...........................................................................4

R.I. Gen. L. § 6-13.1-5.2(d) .......................................................................4, 5

R.I. Gen. L. §§ 6-13.1-1 *et seq.* ....................................................................1

R.I. Gen. L. §§ 6-13.1-1(6)(i)-(iii), (v), (vii)-(ix), (xii)-(xiv), and (xvi)-(xvii) ......................3

R.I. Gen. L. §§ 6A-2-313 to 315 ...................................................................... 1

**Rules**

C.D. Cal. Civ. L.R. 7-3 ................................................................................... 13

Fed. R. Civ. P. 12(b)(1) ................................................................................. 10


**Other Authorities**

8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, FEDERAL PRACTICE
    AND PROCEDURE § 2009 (2d ed. 1994) ...................................................... 10

*Harris v. CVS Pharmacy, Inc.*, No. 13-edcv-2329-AB-AGR
OPPOSITION TO CVS'S MOTION TO DISMISS

**INTRODUCTION**

To dismiss this action for lack of CAFA jurisdiction, CVS must establish "to a legal certainty" that the amount in controversy is less than $5 million. That is not possible. When plaintiff filed this suit, CVS had sold approximately 53,545 units of the accused "6X Better Absorption" CVS Ultra CoQ-10. Plaintiff's claim on behalf of a nationwide class under the Rhode Island Unfair Trade Practice and Consumer Protection Act, provides for the *greater* of a class member's actual damages, or $200. Because CVS sold Ultra for $35, the $200 statutory penalty is greater. Multiplied by the 53,545 units CVS sold at the time of filing, plaintiff has put $10,709,000 in controversy, well more than CAFA's $5 million threshold. And this does not even include amounts put in controversy by plaintiff's claims for punitive damages, attorneys' fees, and injunctive relief. CVS's motion should be denied.

**FACTS**

Plaintiff filed this action on December 18, 2013, asserting claims on behalf of a putative nationwide class for (1) violation of the Rhode Island Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. L. §§ 6-13.1-1 *et seq.* (Dkt. No. 1, Compl. ¶¶ 103-108); (2) breach of express and implied warranties under R.I. Gen. L. §§ 6A-2-313 to 315 (Compl. ¶¶ 132-154); and (3) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* (Compl. ¶¶ 155-166).

CVS has averred that, through December 2013, it sold 53,545 units of Ultra CoQ-10 nationwide. (Fitzgerald Decl. Ex. 1 at 9-11, Response to Interrogatory No. 10.)

**ARGUMENT**

**I.    CVS INVOKES THE WRONG LEGAL STANDARD**

Although CVS challenges plaintiff's assertion of *original jurisdiction* in federal court, seeking *dismissal*, its motion relies on inapt law governing the removal and remand of state court actions.[1] The applicable legal standards differ greatly, and CVS invokes the wrong one.

---

[1] *See* Mot. at 6-9 (citing *Lowdermilk v. United States Bank Nat'l Ass'n*, 479 F.3d 994 (9th Cir. 2007) (addressing question of what defendant must prove to remove case originally filed in state court where plaintiff pleads damages *less* than CAFA's $5 million requirement);

CVS is wrong that merely by "disputing" or "challenging" the amount in controversy, it has somehow initiated a procedure whereby "the parties must submit evidence outside the complaint," and "the court then decides, by a preponderance of the evidence, whether the amount . . . has been satisfied." (Mot. at 8.[2]) Rather, "[i]n diversity cases, where the amount in controversy is in doubt, the Supreme Court has drawn a sharp distinction between original jurisdiction and removal jurisdiction: '[I]n cases brought in federal court . . . [i]t must appear **to a legal certainty** that the [plaintiff's] claim is really for less than the jurisdictional amount to justify dismissal.'" *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (emphasis added) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-90 (1938)); *see also Crum v. Circus Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000) (same); *Budget Rent-A-Car v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997) (same). *Accord Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 807 (7th Cir. 2010) (Posner, J.) ("If at all

---

*Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975 (9th Cir. 2013) (same, overruling *Lowdermilk*); *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676 (9th Cir. 2006) (affirming remand to state court of action removed from state court under CAFA); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193 (9th Cir. 2015) (addressing question of "what proof a defendant seeking removal must produce to prove the amount-in-controversy requirement under" CAFA, "when the complaint does not include a facially apparent amount in controversy or the plaintiff may have understated the true amount in controversy"); *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373 (9th Cir. 1997) (judicial admission established amount in controversy for removal jurisdiction); *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547 (2014) (defendants need not incorporate evidence of amount in controversy into notice of removal); *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107 (C.D. Cal. 2010) (discussing defendant's burden in removing case from state court under CAFA); *Rea v. Michaels Stores, Inc.*, 742 F.3d 1234 (9th Cir. 2014) (discussing what standard applies on removal and remand)). CVS even cites the removal statute, 28 U.S.C. § 1446. (Mot. at 8.)

[2] CVS cites *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348 (1961) for the proposition that courts may look outside the pleadings if *either* (1) the amount in controversy is disputed, or (2) the amount in controversy is not claimed in good faith. But *Horton* only stands for the latter principle, and the first proposition is just unsupported lawyer argument contradicted by applicable law. Moreover, CVS does not dispute—and certainly makes no showing—that plaintiff pled the amount in controversy in good faith; nor could it, since the amount in controversy is met.

*Harris v. CVS Pharmacy, Inc.*, No. 13-edcv-2329-AB-AGR
OPPOSITION TO CVS'S MOTION TO DISMISS

possible . . . a case should stay in the system that first acquired jurisdiction. It should not be shunted between court systems; litigation is not ping-pong.").

## II.   CVS HAS NOT SHOWN TO A LEGAL CERTAINTY THAT THE AMOUNT IN CONTROVERSY IS LESS THAN $5 MILLION

CVS not only relies on the wrong legal standard, but also fails its burden under the correct standard of demonstrating "to a legal certainty" that the amount in controversy is less than $5 million.[3] To the contrary, CAFA's jurisdictional minimum is easily satisfied.

### A.   Compensatory Damages

The Rhode Island Deceptive Trade Practices Act provides:

(a) Any person who purchases or leases goods or services primarily for personal, family, or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act, or practice declared unlawful by § 6-13.1-2,[4] may bring an action under the rules of civil procedure in the superior court of the county in which the seller or lessor resides; is found; has his or her principal place of business or is doing business; or in the superior court of the county as is otherwise provided by law, to recover actual damages or two hundred dollars ($200), whichever is greater. The court may, in its discretion, award punitive damages and may provide other equitable relief that it deems necessary or proper.

R.I. Gen. L. § 6-13.1-5.2(a); *see generally Chavers v. Fleet Bank (RI), N.A.*, 844 A.2d 666, 670 (R.I. 2004). The Act permits class actions to recover statutory damages for those similarly injured:

---

[3] Particularly given its inexplicable 18-month delay in bringing this motion and the prejudice it would cause if granted, CVS should bear a particularly high burden of satisfying the "legal certainty" standard, with all circumstances in inferences construed in the best light to plaintiff.

[4] Section 6-13.1-2 provides simply that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful." Section 6.13.1-1(6), however, defines 20 separate "Unfair methods of competition and unfair or deceptive acts or practices." (*Compare* Compl. ¶ 106 (alleging that CVS's acts were deceptive within the meaning of R.I. Gen. L. §§ 6-13.1-1(6)(i)-(iii), (v), (vii)-(ix), (xii)-(xiv), and (xvi)-(xvii).)

*Harris v. CVS Pharmacy, Inc.*, No. 13-edcv-2329-AB-AGR
OPPOSITION TO CVS'S MOTION TO DISMISS

(b) Persons entitled to bring an action under subsection (a) of this section may, if the unlawful method, act, or practice has caused similar injury to numerous other persons similarly situated and if they adequately represent the similarly situated persons, bring an action on behalf of themselves and other similarly injured and situated persons to recover damages as provided for in subsection (a) of this section. In any action brought under this section, the court may in its discretion order, in addition to damages, injunctive or other equitable relief.

R.I. Gen. L. § 6-13.1-5.2(b).

And it contains a fee-shifting provision: "(d) in any action brought by a person under this section, the court may award, in addition to the relief provided in this section, reasonable attorney's fees and costs." *Id.* § 6-13.1-5.2(d).

CVS avers that it sold 53,454 units as of December 2013, the month plaintiff filed this action. The $200 statutory penalty is greater than each class member's $35 actual damages for each purchase (*see* Dkt. No. 107-3, Molengraff Decl. ¶ 6.). Multiplying the penalty by the units sold,[5] plaintiff's Complaint put in controversy $10,709,000 in statutory damages under the Rhode Island Unfair Trade Practices Act.

## B.   Punitive Damages

Under the Rhode Island Deceptive Trade Practices Act, "[t]he court may, in its discretion, award punitive damages . . . ." R.I. Gen. L. § 6-13.1-5.2(a). The Supreme Court

---

[5] Section 6-13.1-5.2(a) permits recovery of actual or statutory damages for "any ascertainable loss," which means "any loss capable of measurement, no matter how large or small, as a result of an unlawful trade practice," *Park v. Ford Motor Co.*, 844 A.2d 687, 693 (R.I. 2004). Each time a class member purchased CVS Ultra CoQ-10 in reliance on a false statement, she suffered such an independent ascertainable loss. Statutory damages are thus properly assessed on a per-unit, rather than a per-person basis. However, even if, *arguendo*, the statute provided damages on a per-person, rather than per-violation basis, CVS still cannot show to a legal certainty that CAFA's amount in controversy requirement is unsatisfied. Considering, for example, just the $200 statutory penalty and 25% attorneys' fees, or $250 per class member, the class need consist of only 20,000 purchasers. CVS has not shown to a legal certainty that the class is smaller. *Accord Lewis v. Ford Motor Co.*, 610 F. Supp. 2d 476, 486 (W.D. Pa. 2009) ("If the dollar amount per claim is apparent from the complaint or can be determined from the proffered evidence, the number of class members will determine the amount in controversy through the operation of simple multiplication." (quotation omitted)). Moreover, at $35 per unit, those who purchased more than 5 units sustained damages *greater* than $200.

4

has held that "exemplary damages must bear a 'reasonable relationship' to compensatory damages." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 580 (1996); *see also Exxon Shipping Co. v. Baker*, 554 U.S. 471, 497-501 (2008) (explaining range of constitutionally acceptable punitive awards). Because compensatory damages at issue under the Act exceed $10 million, plaintiff does not even need punitive damages to satisfy CAFA's jurisdictional limit, but such damages could put additional tens of millions of dollars in controversy. *C.f. Manier v. Medtech Prods., Inc.*, 2014 WL 1609655, at *2 (S.D. Cal. Apr. 22, 2014) (defendants argue that "in considering a conservative estimate of a 1:1 ratio between compensatory and punitive damages, at a minimum, the punitive damages would be $2 million").

   Even without such a large compensatory damages award, a request for punitive damages can readily satisfy CAFA's amount in controversy requirement. In *Lenell v. Advanced Mining Tech., Inc.*, 2014 WL 7008609 (E.D. Pa. Dec. 11, 2014), defendant asserted that the amount in controversy was limited to $973,959.12 of sales at issue, *id.*, at *2 & n.1, but the court, "[a]ssuming for the sake of argument that Plaintiffs' fraud claims merits an award of the amount spent . . . ," and noting that "a ratio of roughly five to one would exceed the jurisdictional threshold," held "it is reasonable that a jury may award damages in an amount exceeding $5,000,000 if they were persuaded that [harmful] conduct was present in this case." *Id.* at *3. The court concluded it "need not further examine the value of Plaintiffs' claims" since "the punitive damages . . . fulfill the amount in controversy requirement," but "note[d] that attorneys' fees may substantially increase the amount in controversy," *id.*

### C.   Attorneys' Fees

   In diversity cases, "where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998); *c.f. Gibson v. Chrysler Corp.*, 261 F.3d 927, 942-43 (9th Cir. 2001) (attorneys' fees properly included in amount in controversy in class action). Here, fee-shifting is authorized by the Magnuson-Moss Act, *see* 15 U.S.C. § 2310(d)(2), and Rhode Island Unfair Trade Practice and Consumer Protection Act, *see* R.I. Gen. L. § 6-13.1-5.2(d).

When calculating fees for purposes of assessing CAFA jurisdiction, California courts frequently assume 25% of the maximum amount recoverable for the class, or $2,677,250 here (0.25 x $10,790,000). *See*, *e.g.*, *Tompkins v. Basic Research LLC*, 2008 WL 1808316, at *4 (E.D. Cal. Apr. 22, 2008) (adding 25% to amount at issue for attorneys' fees); *Deaver v. BBVA Compass Consulting & Benefits, Inc.*, 2014 WL 2199645, at *6 (N.D. Cal. May 27, 2014) (same); *Stevenson v. Dollar Tree Stores, Inc.*, 2011 WL 4928753, at *5 (E.D. Cal. Oct. 17, 2011) (party reasonably estimated fees at issue as 25% of claims); *c.f. Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007) (in assessing amount in controversy for CAFA purposes, noting "[w]e must also consider attorney's fees," which "could be as much as thirty percent of the judgment").

### D.   Injunctive Relief

"The amount in controversy to be considered also includes either the defendant's cost of compliance with an injunction or the plaintiff's benefit from the injunction." *Tompkins*, 2008 WL 1808316, at *4 (citing *In re Ford Motor Co.*, 264 F.3d 952 (9th Cir. 2001)); *see also Int'l Padi, Inc. v. Diverlink*, 2005 WL 1635347, at *1 (9th Cir. July 13, 2005) (Mem.) ("[I]n determining the amount in controversy, we may also include the value of the requested injunctive relief to either party." (citing *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002); *Ridder Bros., Inc. v. Blethen*, 142 F.2d 395, 399 (9th Cir. 1944))); *Richard C. Young & Co., Ltd. v. Leventhal*, 389 F.3d 1, 3 (1st Cir. 2004) (pecuniary consequences of any corrective advertising ordered in a judgment favorable to plaintiff, are an element of the amount in controversy).

Plaintiff has prayed for injunctive relief including a recall (Compl. ¶ 167(B)), a labeling change (*id.* ¶ 167(C)), and a corrective advertising campaign (*id.* ¶ 167(D)). Plaintiff requested, but CVS did not provide a reasonable estimate of what this relief might cost. (Fitzgerald Decl. ¶ 3.) Nevertheless, such costs are often substantial. *See*, *e.g.*, *Tompkins*, 2008 WL 1808316, at *4-5 (noting evidence that nationwide recall and corrective advertising campaign would cost seller of weight loss dietary supplement $20 million).

6

*Harris v. CVS Pharmacy, Inc.*, No. 13-edcv-2329-AB-AGR
OPPOSITION TO CVS'S MOTION TO DISMISS

By failing to address the costs of injunctive relief, CVS has failed to show "to a legal certainty" that the amount in controversy is unsatisfied.

**E.     The Court Must Consider the Rhode Island Unfair Trade Practices Act When Considering the Amount in Controversy**

Plaintiff expressly pled his request for the $200 per-unit statutory damages under the Rhode Island Unfair Trade Practices Act. (Compl. ¶ 108.) CVS addresses this cause of action, but conspicuously fails to discuss the statutory damages; presumably, it has no good answer. Instead, CVS argues that the Court should ignore plaintiff's claim under the Act for two reasons. Both deserve short shrift.

First, CVS asserts that "plaintiff cannot claim federal subject matter jurisdiction under state law causes of action," (Mot. at 12 (capitalization in heading omitted)). But the point is totally irrelevant because plaintiff invokes *diversity* jurisdiction under CAFA[6] for the Rhode Island causes of action. (*See* Compl. ¶ 10.)

Second, relying primarily on *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), in a footnote CVS expresses doubt that plaintiff will obtain certification of a nationwide class. (Mot. at 12 n.5.) Contrary to CVS's argument, however, "considerations at the jurisdictional stage and the class certification stage are distinct. At this jurisdictional stage, the critical inquiry is the value of the claim asserted in the Complaint at the time it was filed, not . . . whether the Complaint asserts a claim worthy of class certification." *Hoffman v. DSE Healthcare Solutions, LLC*, 2014 WL 1155472, at *3 (D.N.J. Mar. 21, 2014) (further noting that "[i]t would . . . run contrary to the plain language of the [CAFA] to only aggregate . . . the claims of the members who might end up in the as-of-yet certified (or not certified) class . . . . Whatever may come out of a motion for class certification is another question for another day." (quotation omitted)).

---

[6] CAFA was an amendment to the diversity jurisdiction statute, appearing at 28 U.S.C. § 1332(d)(2)(A).

*Harris v. CVS Pharmacy, Inc.*, No. 13-edcv-2329-AB-AGR
OPPOSITION TO CVS'S MOTION TO DISMISS

To the contrary, the Court should "not consider a potential challenge to a future class certification upon Rule 23 standards when considering whether the proposed amended complaint alleges sufficient facts to establish that the Court has subject matter jurisdiction," *Blumer v. Acu-Gen Biolabs, Inc.*, 638 F. Supp. 2d 81, 89 (D. Mass. 2009). *Accord Johnson v. Famous Dave's of Am., Inc.*, 2012 WL 164875, at *2 (E.D. Pa. May 10, 2012) ("Because the Court cannot resolve a complicated issue of class certification at this stage, and the Court of Appeals has advised courts to demand less proof than required for the substantive issue when jurisdictional issues are intertwined, the Court cannot conclude that there is a legal certainty that the plaintiff will be unable to meet the amount-in-controversy requirement."); *Lenell*, 2014 WL 7008609, at *3 ("Taking Plaintiffs' claims as a whole, we conclude that Defendants have failed to show to a legal certainty that Plaintiffs cannot recover the requisite amount in this case. We will not explore Defendants arguments about . . . the applicability of Pennsylvania state consumer protection law to the putative nationwide class."); *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 789-90 (9th Cir. 2012) (where plaintiff's "original complaint did not restrict her class to Missouri plaintiffs, . . . consideration of a nationwide class was appropriate," for purposes of determining amount in controversy, notwithstanding plaintiff's later amending the complaint to limit the class to Missourians).

But even if the likelihood of obtaining class certification *were* a proper inquiry, CVS has *still* not satisfied its burden—with a few sentences in a footnote—to show it is a "legal certainty" plaintiff will not obtain certification of a nationwide class. *In re iPhone 4s Consumer Litig.*, 2013 WL 3829653, at *9 (N.D. Cal. July 23, 2013) ("*Mazza* did not explicitly foreclose[ ] any argument that [state law] . . . can be applied to a nationwide class" (internal quotation marks omitted)); *Won Kyung Hwang v. Ohso Clean, Inc.*, 2013 WL 1632697, at *21 (N.D. Cal. Apr. 16, 2013) (*Mazza* did not establish a bright-line rule prohibiting certification of nationwide classes); *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 548 (C.D. Cal. 2012) (*Mazza* did not preclude certification of a nationwide class); *c.f. Brazil v. Dole Food Co., Inc.*, 2013 WL 5312418, at *11 & n.6 (N.D. Cal. Sept. 23, 2013) (it was

*Harris v. CVS Pharmacy, Inc.*, No. 13-edcv-2329-AB-AGR
OPPOSITION TO CVS'S MOTION TO DISMISS

premature to determine propriety of certifying nationwide class absent detailed choice of law briefing (collecting cases)).

## III.   CVS'S MOTION FAILS EVEN UNDER A PREPONDERANCE STANDARD

Although it is CVS's burden on the present motion to show it is a legal certainty that the amount in controversy is under $5 million, even analyzed under the "preponderance" standard governing removal and remand of actions originally filed in state court, the motion fails. Evidence of Ultra CoQ10's 53,545 units sold, set forth in its Second Supplemental Interrogatory Responses, applied to the Rhode Island Unfair Trade Practices Act's $200 per-violation damages remedy, establishes by a preponderance that CAFA's $5 million threshold is met, notwithstanding CVS's proffered evidence of its $1.2 million dollar sales—especially when considering the additional amounts put in controversy by plaintiff's requests for attorneys' fees, punitive damages, and injunctive relief, which CVS does not even address.

## IV.   IF THE COURT IS NOT SATISFIED THAT THE JURISDICTIONAL MINIMUM IS SATISFIED, IT SHOULD PERMIT PLAINTIFF TO TAKE DISCOVERY GIVEN THE EXTREME PREJUDICE THIS MOTION WILL CAUSE IF GRANTED

That CVS's counsel has charged its clients hundreds of thousands of dollars during the past 18 months, and caused plaintiff's counsel also to spend nearly three-quarters of a million dollars' of lodestar, is inexplicable given that its current motion asserts a jurisdictional defect as of the date of filing a year-and-a-half ago, based on information that has been in CVS's possession all along. CVS's counsel thus exhibits great chutzpah in chiding plaintiff for not "dimiss[ing] this case voluntarily" in August 2014, "when CVS served its Second Supplemental Responses to Interrogatories providing the sales figures," (Mot. at 2 n.2).[7]

Of course, while CVS necessarily knows its actual sales figures (whether or not they correspond to those provided to plaintiff), a party need not take his opponent's word on such

---

[7] CVS's second supplemental interrogatory responses were actually served September 12, 2014, not August. (Fitzgerald Decl. Ex. 1.) CVS's first supplemental interrogatory responses served on August 20, 2014 withheld sales figures for July to October, 2012. (*Id.* Ex. 2.)

*Harris v. CVS Pharmacy, Inc.*, No. 13-edcv-2329-AB-AGR
OPPOSITION TO CVS'S MOTION TO DISMISS

matters, but is entitled to cross-examine and verify through discovery. *C.f.* 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, FEDERAL PRACTICE AND PROCEDURE § 2009, at 124 & n.2 (2d ed. 1994) ("[I]t has long been clear that discovery on jurisdictional issues is proper.").

Although CVS provided purported sales figures last year, plaintiff has not yet had an opportunity to inquire during deposition due to CVS's and its indemnitor, Lang's incessant discovery delays. This is more than lip service, since at least three things call into question the veracity of CVS's stated sales.

First, CVS's failure to make this jurisdictional motion during the last 18 months calls into question the veracity of the motion and supporting evidence, filed just as plaintiff is starting depositions, and on the verge of a class certification motion and the close of discovery. Second, the sales figures in CVS's verified interrogatory responses, and in Ms. Molengraff's declaration, are inconsistent. (*Compare* Molengraff Decl. ¶ 8 (representing $1,192,234 nationwide sales as of December 18, 2013) *with* Fitzgerald Decl. ¶ 2 & Ex. 1 (CVS interrogatory responses showing $985,577 sales through December 2013).) Third, after providing sales figures in its interrogatory responses for *this litigation*, CVS produced—only after compelled by Judge Rosenberg to do so (*see* Dkt. No. 69)—a document sent for *business purposes* suggesting yet another entirely different amount of sales. (Fitzgerald Decl. ¶ 5 & Ex. 3.)

"[A] plaintiff who chooses a federal forum 'should be given the opportunity to discover facts that would support . . . allegations of jurisdiction,' and ordering 'dismissal without affording the plaintiff any opportunity to proceed with reasonable discovery [is] premature,'" *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 774-75 (11th Cir. 2010) (concurrence) (quoting *Majd-Pour v. Georgiana Cmty. Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984)); *see also Rivera-Flores v. Puerto Rico Tel. Co.*, 64 F.3d 742, 748 (1st Cir. 1995) ("the court has great latitude to direct limited discovery and to make such factual findings as are necessary to determine its subject matter jurisdiction" (citing *Land v. Dollar*, 330 U.S. 731, 735 (1947); Fed. R. Civ. P. 12(b)(1))); *c.f. Tompkins*, 2008 WL 1808316, at *3 ("In certain

10

situations, it may be appropriate for the court to grant limited discovery relevant to the jurisdictional amount before deciding the motion to remand." (citing *Gibson*, 261 F.3d at 948)).

CVS's motion to dismiss threatens to greatly prejudice plaintiff and his counsel, who have devoted tremendous time, money, and effort into this case during these past 18 months that CVS remained silent. Accordingly, if the Court does not deny the motion outright, it should at least permit plaintiff to take discovery sufficient to test CVS's representations of its sales, and the costs of the injunctive relief requested. For examination on CVS's sales, plaintiff must take the depositions of Karen Feisthamel, who verified CVS's interrogatory responses (Fitzgerald Decl. Ex. 1), Hillary Molengraff, who supports CVS's current motion with a declaration (Dkt. No. 107-3), Melissa O'Brien, who sent the email for business purposes suggesting a different amount of sales (Fitzgerald Decl. Ex. 3), and CVS's Rule 30(b)(6) witness on this exact topic as set forth in plaintiff's Rule 30(b)(6) Deposition Notice (*see id.* ¶ 6 (setting forth deposition topic number 21, "On a monthly, quarterly, and annual basis, ULTRA'S unit and dollar sales nationwide, and separately in California only.")).

CVS should also be directed to designate a witness who can testify as to the costs involved in undertaking the injunctive relief plaintiff seeks.

## V.   THE COURT SHOULD PROVIDE GUIDANCE ON THE REQUIREMENTS OF LOCAL RULE 7-3

Plaintiff is frustrated by what he believes to be a pattern of CVS's noncompliance with the letter and spirit of the meet-and-confer requirements of Local Rule 7-3, and thus requests guidance from the Court on whether CVS's method of meeting and conferring is acceptable (such that, if so, plaintiff may engage in the same practices as well). CVS's last two motions are illustrative.

First, with respect to its motion to dismiss *Alvandi*,[8] CVS's counsel sent an email at 10:49 p.m. on Thursday, April 16, 2015, which, in full stated:

---

[8] *Alvandi v. CVS Pharmacy, Inc. et al.*, No. 15-cv-1503-AB-AGR (C.D. Cal.).

11

1  Please be advised, pursuant to Local Rule 7-3, that we intend to file a

2  Motion to Dismiss the *Alvandi v. CVS* case on the grounds that the Court lacks

3  subject matter jurisdiction under either the Class Action Fairness Act or the

4  Magnuson-Moss Warranty Act. Specifically, we intend to demonstrate that

5  plaintiff cannot meet the $5 million threshold for CAFA jurisdiction, and the

6  Complaint otherwise fails to meet the pleading requirements for the MMWA.

7  Accordingly, please accept this correspondence as a request that you

8  dismiss the Complaint because there is no basis on which this Court can assert

9  subject matter jurisdiction. If you do not agree to dismiss voluntarily, we will

10  move forward with our motion to dismiss.

11  If you would like to discuss further, I am available any time tomorrow.

12  (*Alvandi* Dkt. No. 16-3, Johnston Decl. Ex. A.)

13  Local Rule 7-3 does not permit a party to merely disclose by email its intention to file

14  a motion, provide barely any information beyond the nature of the motion itself, and meekly

15  offer to be "available" if the other party "would like to discuss." Rather, Local Rule 7-3

16  requires a party contemplating a motion—no less than 7 days before the motion is filed—to

17  "conference" and "discuss thoroughly the substance of the motion and any resolution."

18  This is not mere formality. The Central District's Honorable Chief Judge George H.

19  King expressly states in his Case Management Orders, that "[a]ll 7-3 conferences shall take

20  place via a communication method that, at a minimum, allows all parties to be in realtime

21  communication (letters and email, for example, do not constitute a proper 7-3 conference)."

22  *See*, *e.g.*, *Bohn v. Pharmavite, LLC*, 2013 WL 4517173, at *1 (C.D .Cal. Feb. 5, 2013). That

23  is because "a meet and confer conducted in good faith not only allows for a possible informal

24  resolution of an issue without court intervention, but also enables the parties to brief the

25  remaining disputes in a thoughtful, concise, and useful manner," *Pedroza v. Petsmart, Inc.*,

26  2012 WL 9507910, at *1 (C.D. Cal. June 14, 2012) (internal quotation marks and record

27  citation omitted).

28

12

Notwithstanding, CVS never requested, and never engaged in a "conference" regarding its motion to dismiss *Alvandi*. (*See generally Alvandi* Dkt. No. 23 at 2-4.)

With respect to the instant motion, CVS's behavior was similar. At 11:23 p.m. the night of June 1, CVS's counsel wrote to just one of plaintiff's attorneys, characterizing the email as "an attempt to meet and confer pursuant to Central District Local Rule 7-3," noting that "we do not intend to file this motion before June 8," and requesting that plaintiff "advise of a good time to discuss between now and then." (Dkt. No. 107-2, Johnston Decl. Ex. A.)

Plaintiff did so, with his counsel first responding that "[y]our email 40 minutes before midnight on June 1, saying you intend to file a motion on June 8, does not satisfy the requirements of Local Rule 7-3, which requires the parties to engage in a 'conference,' 'preferably in person,' to 'discuss thoroughly the substance of the motion and any resolution' at least 7 days before any motion is filed." A few hours later, counsel advised it was "available to conference on your client's proposed motion to dismiss on Thursday, June 4, at 3:00 p.m." The following afternoon, CVS's counsel agreed. (Fitzgerald Decl. Ex. 4.)

The parties held the conference that Thursday, during which plaintiffs requested CVS wait the required 7 days to file, but CVS refused on grounds that it need only wait 7 days from the day it sent the 11:23 p.m. email notifying plaintiff of the proposed motion. (*Id.* ¶ 8.) And indeed, CVS filed on Monday, June 8, just 4 days later.

In *Singer v. Live Nation Worldwide, Inc.*, 2012 WL 123146 (C.D. Cal. Jan. 13, 2012), the Honorable David O. Carter found that the "Defendant's counsel failed to comply with Local Rule 7-3," because "[w]hile Defendant's notice of motion states that the 'motion is made following the conference of counsel pursuant to Local Rule 7-3,' the date on which the conference of counsel took place, which is *required* under the Local Rule, is omitted." *Id.*, at *2. That is true here, too: for its last two motions, CVS did not, because it was unable truthfully to do so in a manner compliant with Local Rule 7-3, make the required statement that "[t]his motion is made following the conference of counsel pursuant to L.R. 7-3, **which took place on (date)**." C.D. Cal. Civ. L.R. 7-3 (emphasis added). (*See* Mot. at 2; *Alvandi* Dkt. No. 16-1 at 1.)

Plaintiff is frustrated with CVS's practices because they compress the time plaintiff has to research the issues and formulate a position; and because they suggest that CVS has no real intention of meeting-and-conferring in good faith—basically, by the time CVS sends its "intention to file a motion" email, its mind is made up, and the motion will be filed exactly as CVS originally conceives it. As Judge King explains, this fails to "allow[] for a possible informal resolution of an issue without court intervention, [or to] enable[] the parties to brief the remaining disputes in a thoughtful, concise, and useful manner."

Accordingly, plaintiff respectfully requests the Court either: (a) admonish CVS that compliance with Local Rule 7-3 requires *both* (i) that a real-time "conference" take place so that the parties may "discuss thoroughly the substance of the motion and any resolution," and (ii) that the motion be filed no less than 7 days *following the conference* (not, as is CVS's habit, 7 days following a late-night email advising counsel of its intent to file a motion what is effectively 6 days later by the time counsel receives the email the following day);[9] or (b) advise plaintiff that CVS's practices comply with Local Rule 7-3 so that plaintiff can take equal advantage of leveraging as short a schedule and as little actual meeting-and-conferring as possible before bringing motions.[10]

---

[9] Plaintiff's counsel has always made itself available within a reasonably short time period at CVS's request, and further takes seriously its meet-and-confer obligations under Local Rule 7-3, whether as the proponent or opponent of a motion. However, counsel will not always be available the same day CVS requests a conference, and therefore, to comply with the Rule, just as plaintiff has done, CVS must request a 7-3 conference sufficiently in advance of the day it wishes to file the motion, so that the conference can take place at least 7 days before filing.

[10] Plaintiff has treated his meet-and-confer obligations under the Local Rules far more seriously than CVS, often engaging in rounds of written and telephonic communications to narrow issues in good faith, before ultimately seeking relief if and as still necessary. (*See* Dkt. Nos. 60-1 at 1; 83 at 1; 93 at 1.)

## <u>CONCLUSION</u>

The Court should deny CVS's motion to dismiss because CVS has failed to demonstrate "to a legal certainty" that the claims asserted in plaintiff's Complaint are worth less than CAFA's $5 million minimum amount-in-controversy requirement.

The Court should also direct CVS to comply with the spirit and letter of Local Rule 7-3 (or find that CVS has substantially complied so that plaintiff's expectations can be managed and plaintiff can take the same advantages as CVS).

Dated: June 15, 2015                   Respectfully Submitted,

                                       /s/ Jack Fitzgerald
                                       **THE LAW OFFICE OF JACK**
                                       **FITZGERALD, PC**
                                       JACK FITZGERALD
                                       *jack@jackfitzgeraldlaw.com*
                                       TREVOR M. FLYNN
                                       *trevor@jackfitzgeraldlaw.com*
                                       TRAN NGUYEN
                                       *tran@jackfitzgeraldlaw.com*
                                       Hillcrest Professional Building
                                       3636 4th Ave., Ste. 202
                                       San Diego, CA 92103
                                       Phone: (619) 692-3840

                                       **LAW OFFICES OF RONALD A.**
                                       **MARRON, APLC**
                                       RONALD A. MARRON
                                       *ron@consumersadvocates.com*
                                       SKYE RESENDES
                                       *skye@consumersadvocates.com*
                                       ALEXIS M. WOOD
                                       *alexis@consumersadvocates.com*
                                       651 Arroyo Drive
                                       San Diego, CA 92103
                                       Phone: (619) 696-9006

                                       ***Counsel for Plaintiff and the Putative Class***