JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No.: | ED CV 13-02329-AB (AGRx) | Date: | August 6, 2015 |

Title: *Leo Harris v. CVS Pharmacy, Inc. et al.*

Present: The Honorable ANDRÉ BIROTTE JR.

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** **[In Chambers] Order GRANTING Motion To Dismiss**

Plaintiff Leo Harris ("Plaintiff") brings this putative class action complaint, alleging that Defendant CVS Pharmacy, Inc. ("CVS") violated various California and Rhode Island consumer protection statutes and breached express and implied warranties in connection with the marketing and sale of the CVS-branded Ultra CoQ10 softgel dietary supplements. (Dkt. No. 1.)

CVS filed a motion to dismiss this action for lack of subject-matter jurisdiction on the grounds that Plaintiff's class action complaint fails to satisfy the jurisdictional requirements of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), and the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*, and Plaintiff does not plead any other basis for subject-matter jurisdiction. (Mot. to Dismiss, Dkt. No. 107.) Plaintiff opposed (Dkt. No. 108), and CVS filed a reply brief. (Dkt. No. 115.) The Court took the matter under submission without oral argument. (Dkt. No. 122.) Having considered the materials and arguments submitted by the parties, and for the reasons indicated below, the Court **GRANTS** Defendant's motion to dismiss (Dkt. No. 107), and **DISMISSES** this action **WITHOUT PREJUDICE** to Plaintiff reasserting his claims in a

court of competent jurisdiction.

## I. BACKGROUND

### A. Plaintiff's Action

In December 2013, Plaintiff filed a false advertising putative class action on behalf of individuals who purchased the CVS-branded dietary supplement "Ultra CoQ10" from CVS. Coenzyme Q10, or CoQ10, is a naturally occurring compound produced in the human body, and people take CoQ10 supplements to, among other things, improve overall health. The packaging for the Ultra CoQ10 supplements state that the supplements provide "6X Better Absorption" than "regular CoQ-10 softgels" using a "patented VESIsorb® technology from Switzerland," and that the supplements support "Heart & Muscle Health." The U.S. Pharmacopeial Convention ("USP") sets standards for dietary supplements, including labeling standards. With respect to CoQ10, USP requires that at least 75% of the amount of CoQ10 in a given capsule (as represented on the product label) dissolve in the blood stream. To properly dissolve, "most" capsules must rupture within 15 minutes of ingestion, and 2 out of every 18 capsules may rupture within 30 minutes of ingestion. With respect to labeling requirements, USP only requires that CoQ10 labels state whether the capsules are water-soluble or fat-soluble. The crux of Plaintiff's claims is that independent laboratory testing has conclusively demonstrated that the CVS Ultra CoQ10 supplements do not rupture within 15 minutes; that out of 12 capsules tested, only 2 fully ruptured, and even then they ruptured 50 minutes after ingestion with dissolution rates under 28%; and that the study cited to support the "6X Better Absorption" claim is flawed. (*See generally* Complaint, Dkt. No. 1.)

Plaintiff asserts putative class action claims under Rhode Island law and the MMWA on behalf of all persons in the United States who purchased CVS Ultra CoQ10. (Complaint, Dkt. 1.) Plaintiff also asserts claims under California law on behalf of a California subclass of all persons in California who purchased CVS Ultra CoQ10. *Id*. Plaintiff seeks to recover damages equal to the amount of the full purchase paid for CVS Ultra CoQ10 by members of the class, or statutory damages as applicable. (*Id.*)

### B. Nationwide Sales of CVS Ultra CoQ10

As of December 18, 2013, when Plaintiff filed the Complaint, nationwide sales of CVS Ultra CoQ10 totaled $1,192,234. (Molengraff Decl., Dkt. No. 107, ¶ 8.) However, in a separate discovery response, CVS showed $985,577 in national sales through December 2013. (Fitzgerald Dec. Ex. 3, Dkt. No. 117.) At that time, the sales for CVS Ultra CoQ10 in California CVS stores totaled $151,701. (Molengraff Decl., Dkt. No. 107, ¶ 7.) Through December 2013, CVS sold 53,545 units of Ultra CoQ10 nationwide. (Fitzgerald Decl. Ex. 1 at 9-11, Response to Interrogatory No. 1, Dkt. No. 117.)

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction, having subject-matter jurisdiction only over matters authorized by the Constitution and Congress. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Courts "presume[] that a cause lies outside this limited jurisdiction," until the party invoking federal jurisdiction establishes otherwise. *Id.*; *In re Wilshire Courtyard*, 729 F.3d 1279, 1284 (9th Cir. 2013) ("The burden of establishing subject matter jurisdiction rests on the party asserting that the court has jurisdiction."). The proponent of jurisdiction has the burden of establishing every element of federal jurisdiction, including any applicable amount in controversy. *Abrego Abrego v. The Dow Chemical Co.*, 433 F.3d 676, 682-83 (9th Cir. 2006). Under Federal Rule of Civil Procedure ("Rule") 12, a defendant may move, at any time, to dismiss for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A federal court always has jurisdiction to determine its jurisdiction." *In re Bunyan*, 354 F.3d 1149, 1152 (9th Cir. 2004) (citing *United States v. Ruiz*, 536 U.S. 622, 628 (2002)).

Under Rule 12(b)(1), a defendant may bring a facial attack on the court's subject-matter jurisdiction, in which case, the court "assume[s] [plaintiff's factual] allegations to be true and draw[s] all reasonable inferences in his favor." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Courts do not accept the truthfulness of any legal conclusions contained in the complaint when assessing a facial attack on subject-matter jurisdiction under Rule 12(b)(1). *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Under Rule 12(b)(1), a defendant may also bring a factual attack on the district court's subject-matter jurisdiction. Unlike a Rule 12(b)(6) motion or a facial Rule 12(b)(1) motion, a factual attack on subject-matter jurisdiction under Rule 12(b)(1) affords the district court discretion to consider extrinsic evidence and, if disputed, weigh the evidence to determine whether the facts support subject-matter jurisdiction without converting the motion to dismiss into a motion for summary judgment. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In this case, the Court does not presume the truthfulness of the plaintiff's allegations. *Id.* "The presumption of correctness that we accord to a complaint's allegations falls away on the jurisdictional issue once a defendant proffers evidence that calls the court's jurisdiction into question." *Commodity Trend Service, Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998).

"When the defendant raises a factual attack, the plaintiff must support her jurisdictional allegations with competent proof…." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (internal quotes omitted.) Generally, the plaintiff must prove each of the requirements for subject-matter jurisdiction by a preponderance of the evidence in response to a defendant's factual Rule 12(b)(1) motion. *Id.* However, "a plaintiff need only establish a prima facie case of jurisdiction" if the court decides the motion without an evidentiary hearing. *Rancheria v. Bonham*, 872 F. Supp. 2d 964, 968 (N.D. Cal. 2012).

## III. DISCUSSION

Plaintiff invokes the Court's diversity jurisdiction under CAFA and the Court's federal question jurisdiction MMWA. (Dkt. No. 1, ¶10.) The Court addresses each claim for subject-matter jurisdiction separately.

### A. Plaintiff Has Not Met His Burden to Prove that the Amount in Controversy Exceeds CAFA's $5,000,000 Jurisdictional Requirement

On July 16, 2015, CVS filed a Motion to Dismiss under Rule 12(b)(1), arguing that the Court lacks subject-matter jurisdiction. Plaintiff seeks to invoke the District Court's jurisdiction under CAFA. Federal courts have original jurisdiction under CAFA where the number of proposed plaintiffs is greater than 100, there is a diversity of citizenship between any member of the class and any defendant, and the amount in controversy is more than $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d); *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015). Though a putative class action complaint need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold, when the amount in controversy is contested, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin Operating Co., LLC v. Owens*, -- U.S. --, 135 S. Ct. 547, 550 (2014) (analyzing jurisdiction in the context of when a defendant removes an action to federal court under CAFA).

Plaintiff's complaint alleges that the Court has original diversity jurisdiction under CAFA because "the amount in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs." (Complaint, Dkt. No. 1, ¶ 10.) Defendant disputes Plaintiff's amount in controversy and provides evidence that as of December 2013 when Plaintiff filed suit, CVS' total sales for CVS Ultra CoQ10 was $1,192,234 for CVS stores nationwide. (Molengraff Decl., Dkt. No. 107, ¶ 8.) Plaintiff argues that the sales figures in CVS interrogatory responses and Ms. Molengraff's declaration are inconsistent with Mr. Fitzgerald's declaration showing $985,577 sales through December 2013. (Molengraff Decl. ¶ 8; Fitzgerald Decl. ¶ 2 & Ex. 3.) But these discrepancies in the sale figures do not support the proposition that the amount in controversy is satisfied, or can be satisfied if Plaintiff is given an opportunity to discover new facts regarding CVS's sale of Ultra CoQ10. Even considering the sales numbers most favorable to Plaintiff, the total amount of sales, as of December 2013, did not exceed $1,192,234.

In opposition to the motion, Plaintiff does not dispute that he is unable to satisfy CAFA's $5,000,000 jurisdictional threshold using his full refund model of restitution or compensatory damages. Rather, Plaintiff's argument that he has satisfied CAFA's jurisdictional amount-in-controversy is premised on his claims under the Rhode Island Deceptive Trade Practices Act ("RIDTPA," R.I. Gen. L. §6-13.1-1, *et seq*.), which provides for statutory damages, punitive damages, and attorneys' fees. (Dkt. No. 108, pp.

3-5, 7-9.) Alternatively, Plaintiff contends that he has satisfied CAFA's amount-in-controversy requirement after accounting for the value of the injunctive relief. (Dkt. No. 108, pp. 6-7.)[1]

### 1. Plaintiff Lacks Standing to Assert Claims for Statutory Damages under the Rhode Island Deceptive Trade Practices Act

As in any other case in federal court, "named plaintiffs who represent a class must allege and show that they" personally have standing under Article III to bring suit; it is not enough to show that "other, unidentified members of the class to which they belong and which they purport to represent" will eventually have standing. *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotes omitted). "[E]ven when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, [the Supreme] Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Because a plaintiff's standing to bring suit is a fundamental aspect of a district court's subject-matter jurisdiction,[2] a district court may (and generally should) "address[] the issue of standing before it addresse[s] the issue of class certification." *Easter v. American West Financial*, 381 F.3d 948, 962 (9th Cir. 2004); *Lee v. State of Oregon*, 107 F.3d 1382, 1390 (9th Cir.1997) ("Standing is a jurisdictional element that must be satisfied prior to class certification.") (citation omitted); *accord In re Carrier IQ, Inc.*, __ F. Supp. 3d __, 2015 WL 274054 at *8-14 (noting that district courts have discretion to determine whether to consider standing before class certification and dismissing state-law consumer protection claims where no named plaintiff had standing to assert any of the dismissed claims). Standing is claim-specific and "a plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

Whether Plaintiff may rely on the RIDTPA's unique statutory damage provisions to take his claims above CAFA's $5,000,000 jurisdictional threshold, therefore, depends on his individual standing to bring a claim under that Rhode Island statute. *Warth v. Seldin*, *supra*, 422 U.S. at 499. As the party advocating for the application of Rhode Island law, Plaintiff must make at least *prima facie* showing that the RIDTPA applies to him such that he would have standing to bring that claim. *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 657 (C.D. Cal. 2014). This is a particularly difficult burden for Plaintiff to bear, however, because Plaintiff (as the only named plaintiff in this uncertified class action) alleges that he is a resident of California who purchased the CVS-branded CoQ10 supplement in California. (Dkt. No. 1, ¶¶8, 32.) "Courts routinely dismiss claims" for lack of

---

[1] Plaintiff does not argue that his claims under California law on behalf of the putative California class are sufficient to satisfy CAFA's $5,000,000 jurisdictional threshold. As noted above, CVS's total sales in California totaled $151,701 at the time Plaintiff brought suit. (Dkt. No. 107-3, ¶7.)

[2] *Bates v. United Parcel Svc., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)

subject-matter jurisdiction "where no plaintiff is alleged to reside in a state whose laws the class seeks to enforce" because the named plaintiff lacks standing to invoke the foreign statute.  *In re Aftermarket Auto. Lighting Products Antitrust Litig.*, No. 09 MDL 2007-GW PJWX, 2009 WL 9502003, at *6 (C.D. Cal. July 6, 2009); *accord In re Carrier IQ, Inc.*, *supra*, 2015 WL 274054, 14 ("Plaintiffs do not have standing to assert claims from states in which they do not reside or did not purchase their mobile device"); *Fenerjian v. Nongshim Co., Ltd*, 72 F. Supp. 3d 1058 (N.D. Cal. 2014) ("None of the named…plaintiffs reside[d] in, or suffered an injury in" 24 states in a national class action" and "therefore lack[ed] standing to assert claims based on those states' laws"); *Pardini v. Unilever United States, Inc.*, 961 F. Supp. 2d 1048, 1061 (N.D. Cal. 2013) ("Here, there is only one named plaintiff and she has not alleged that she purchased [the offending product] outside of California. Thus, Plaintiff does not have standing to assert a claim under the consumer protection laws of the other states named in the Complaint. This is a pleading defect amenable to determination prior to a motion for class certification."); *In re Apple & AT&TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1309 (N.D. Cal. 2008) (named plaintiffs in national class action lacked standing to assert "violations of the consumer protection laws of" states where they did not reside or suffer an injury); *In re Ditropan LX Antitrust Litigation*, 529 F. Supp. 2d 1098, 1107 (same); *In re Graphics Processing Units Antitrust Litigation*, 527 F. Supp. 2d 1011, 1026-27 (N.D. Cal. 2007) (same).

To meet his burden of proving standing under Rhode Island law, Plaintiff must show some plausible basis for invoking that foreign law.   Plaintiff does not, however, argue that the RIDTPA has extraterritorial effect outside of Rhode Island.   To the contrary, Rhode Island law is clear that, absent some indication to the contrary "extraterritorial force cannot be given to a [Rhode Island] statute."   *Farrell v. Employers' Liab. Assur. Corp.*, 54 R.I. 18, 168 A. 911, 912 (R.I. 1933); *Grinnell v. Wilkinson*, 39 R.I. 447, 98 A. 103, 106 (1916) ("Unless the intention to have a statute operate beyond the limits of a state is clearly expressed or reasonably to be inferred from the language of the act, or from its purpose, subject-matter, or history, the presumption is that the statute is intended to have no extraterritorial effect"); *see also Morrison Nat'l Australia Bank, Ltd.*, 561 U.S. 247, 255 (2010) ("When a statute gives no clear indication of an extraterritorial application, it has none.")

Nor does Plaintiff identify any basis to conclude that the law of Rhode Island would apply to him under standard choice-of-law principles.   Because California's choice-of-law rules apply in this diversity action,[3] Plaintiff may only apply Rhode Island law to his alleged injury if Rhode Island's interest in applying its consumer protection laws in California outweigh California's interest in applying its own consumer protection laws

---

[3] *Zinser v. Accufix Research Inst.*, Inc., 253 F.3d 1180, 1187 (9th Cir. 2001) ("A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law")

in California.[4] *Mazza v. American Honda Motor Co., Inc.* ("*Mazza*"), 666 F.3d 581, 590 (9th Cir. 2012), citing *McCann v. Foster Wheeler LLC*, 48 Cal.4th 68, 81-82, 225 P.3d 516 (2010). California law generally recognizes that "the place of the wrong has the predominant interest." *Mazza*, 666 F.3d at 593, quoting *Hernandez v. Burger*, 102 Cal.App.3d 795, 802, 162 Cal.Rptr. 564 (1980). In the context of a plaintiff alleging false advertisement, the "place of the wrong" is where the plaintiff received the allegedly false advertisement. *Mazza*, 666 F.3d at 593-94. Under those choice-of-law principles, the fact that Defendant is incorporated in Rhode Island is not sufficient to overcome California's interest in applying its consumer protection laws to Plaintiff's transaction, which occurred entirely within California. *Id.* at 594 (under California's choice-of-law rules, the fact that defendant was incorporated in California was not sufficient to justify applying California's consumer protection laws to non-resident plaintiffs who bought product outside of California).

Plaintiff having failed to establish any basis for applying Rhode Island law to him, he lacks standing to assert any claims under the RIDTPA or any other provision of Rhode Island law. *In re Carrier IQ, Inc.*, *supra*, 2015 WL 274054, at *14; *Fenerjian v. Nongshim Co., Ltd*, *supra*, 72 F. Supp. 3d 1058; *Pardini v. Unilever United States, Inc.*, *supra*, 961 F. Supp. 2d at 1061; *In re Aftermarket Auto. Lighting Products Antitrust Litig.*, *supra*, 2009 WL 9502003, at *6; *In re Apple & AT&TM Antitrust Litig.*, *supra*, 596 F. Supp. 2d at 1309; *In re Ditropan LX Antitrust Litigation*, *supra*, 529 F. Supp. 2d at 1107; *In re Graphics Processing Units Antitrust Litigation*, 527 F. Supp. 2d at 1026-27. Absent any standing to invoke Rhode Island law, the Court lacks jurisdiction to entertain Plaintiff's claims under the RIDTPA, and Plaintiff cannot rely on the RIDTPA's statutory damages provision to satisfy CAFA's $5,000,000 amount-in-controversy requirement.

### a. The Court's Analysis Does Not Confuse Choice of Law with Standing

It is important to distinguish the question of Plaintiff's standing to assert a claim under Rhode Island law from the distinct issue of whether it would be appropriate under regular choice-of-law principles to apply Rhode Island law to a nationwide class under Rule 23. The latter inquiry is one best reserved for class certification. *See Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1160 n.3. The former, however, goes to the heart of the Court's subject-matter jurisdiction and should be decided as soon as possible. *See Lee v. State of Oregon*, *supra*, 107 F.3d at 1390. While it is true that "choice of law is not the

---

[4] Under California's three-prong "governmental interest test," Plaintiff, as the party invoking foreign law, bears the burden of initially proving: (1) that Rhode Island is different than California law; and (2) that the difference is material. *See Allen v. Hyland's*, *supra*, 300 F.R.D. at 656-58. Plaintiff fails to show either, and for that reason alone cannot rely on choice-of-law to invoke the RIDTPA. However, even assuming there is a true conflict between California law and Rhode Island law, Plaintiff fails to establish any basis for applying Rhode Island law to him that might give him standing to assert such a claim.

same thing as standing,"[5] under these circumstances a choice-of-law analysis is essential to determine whether Plaintiff has any standing to bring his claim *under Rhode Island law*. It may be that Plaintiff has standing to bring *some* claim from his California purchase, but "plaintiff must demonstrate standing for *each claim he seeks to press*." *DaimlerChrysler Corp. v. Cuno*, supra, 547 U.S. at 335 (emphasis added). Where "the source of the plaintiff's claim to relief" is a statute, "the standing question…is whether the…statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief."[6] *Warth v. Seldin*, supra, 422 U.S. at 500. "In cases involving statutory rights, the particular statute and the rights it conveys guide the standing determination." *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1114 (9th Cir. 2014) (internal quotes and edits omitted).[7] At minimum, this means that "a plaintiff must be among the injured, in the sense that she alleges the defendants violated *her* statutory rights." *Robins v. Spokeo, Inc.*, 742 F.3d 409, 413 (9th Cir. 2014) (emphasis in original) (internal quotes omitted).

     Put simply, Plaintiff must show that he actually had rights under the RIDTPA to begin with before he has standing to claim he CVS violated those statutory rights. Absent an enforceable right under the RIDTPA, Plaintiff cannot have suffered a claim-specific injury under the statute. *Warth v. Seldin*, supra, 422 U.S. at 500; *accord Nirmul v. BMW of N. Am., LLC*, 10 Civ. 5586(SDW), 2011 WL 5195801 (D.N.J. Oct. 31, 2011) (plaintiffs, who were not citizens of New Jersey and their only connection to New Jersey was that defendant was headquartered there, lacked standing to bring suit under New Jersey consumer protection statute because they had no basis to invoke protection of New Jersey law). There are numerous ways Plaintiff could have demonstrated a cognizable, individualized right under Rhode Island law – including but not limited to an individualized choice-of-law analysis. He failed to make that showing, and lacks standing to seek the protection of a statute that never applied to him in the first place. Whether Defendant's alleged conduct gives Plaintiff individualized standing to seek a remedy under *California law* is immaterial to his claim-specific burden of showing an individualized

---

[5] *Allen v. Hylands, Inc.*, No. CV 12-01150 DMG MANX, 2012 WL 1656750, at *2 (C.D. Cal. May 2, 2012)

[6] The question of available relief raises a related but distinct obstacle to Plaintiff's claim of standing. Article III demands that Plaintiff must not only demonstrate an injury, but an available remedy. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107 (1998); *Boating Industry Associations v. Marshall*, 601 F.2d 1376, 1380 (9th Cir. 1979). Though choice-of-law and standing are analytically distinct, Plaintiff asserts no plausible basis to suggest he has a remedy under Rhode Island law *other than* through a choice-of-law analysis. Because that analysis eliminates Plaintiff's only hope of a remedy under Rhode Island law, it also defeats his claim-specific assertion of standing under Rhode Island law. *See In re Multidistrict Vehicle Air Pollution*, 538 F.2d 231, 235 n.5 (holding it is "a futile gesture to read the language of [a statute] as granting standing to seek a remedy which was necessarily unavailable").

[7] This is true whether the statutory right (and therefore Article III standing) is created by a state statute or an act of Congress. *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001).

injury under Rhode Island law.[8]

### 2. Plaintiff's Claims for Punitive Damages and Attorneys' Fees Under the RIDTPA Fail for the same Reason

Plaintiff also claims that he has satisfied CAFA's $5,000,000 threshold amount in controversy requirement because he has prayed for punitive damages and attorneys' fees under the RIDTPA. (Opp., Dkt. No. 108, p. 5 n.10-11.) Plaintiff, however, has no standing to invoke Rhode Island law and cannot rely on the RIDTPA's attorneys' fee and punitive damages provisions. Besides, Plaintiff does not argue that he can satisfy CAFA's amount-in-controversy requirement based on any punitive damages and attorneys' fees provision of California law. This is particularly so given that Plaintiff only alleges claims under California law on behalf of the California sub-class, where sales at the time Plaintiff brought suit totaled only $151,701. (Dkt. No. 107-3, ¶7.)

### 3. Plaintiff Has Not Met His Burden of Establishing that the Value of Injunctive Relief Exceeds $5,000,000

Finally, Plaintiff claims that the value of injunctive relief should be considered in calculating the amount in controversy. (Opp., Dkt. No. 108, pp. 6-7.) "The test for determining the amount in controversy is the pecuniary result to either party that the judgment would directly produce." *In re Ford Motor Co./Citibank (S. Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001). Where a plaintiff's potential monetary recovery is below the jurisdictional threshold, this "pecuniary result" rule means that courts also consider "the potential cost to the defendant of complying with [an] injunction…." *Id*. But as with all other aspects of jurisdiction, Plaintiff (as the party invoking federal jurisdiction under CAFA) bears the burden of proving "what the value of the injunction they seek in this case might be." *Hildreth v. Unilever U.S., Inc.*, No. CV 10-07936 MMM (SSx), 2010 WL 5174385 at *4 n.21 (C.D. Cal. Dec. 15, 2015).

Plaintiff fails to offer any "substantial, plausible evidence," *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014), indicating the value of the injunctive relief Plaintiff seeks, let alone that the value of that injunctive relief exceeds CAFA's jurisdictional threshold. Instead, Plaintiff argues that during meet-and-confer discussions in advance of this motion, Plaintiff "requested that CVS provide a reasonable and supported estimate of such costs, and the opportunity to take discovery concerning the same" but that "CVS did not agree to provide plaintiff with an estimate, nor discovery." (Fitzgerald Decl., Dkt. No. 108-1, ¶3.)

---

[8] Nor does the Court's analysis prematurely decide Plaintiff's adequacy to serve as a class representative under Rule 23 for non-California plaintiffs. Whether Plaintiff's claim and interests are sufficiently aligned with non-California class members such that he could adequately represent their interests under Rule 23 is a different question than the one the Court addresses here: whether he has standing to personally assert a claim under Rhode Island law.

Yet, as Plaintiff is eager to point out in a different context (Opp., Dkt. No. 108, p. 3 n.3), this action had been pending for more than 18 months by the time Plaintiff filed his opposition. Plaintiff fails to offer any reason why 18-months of discovery was inadequate for him to obtain that information (or any other discovery necessary to make a prima facie showing that the amount-in-controversy exceeds $5,000,000) with any of the numerous discovery mechanisms at his disposal. At minimum, if Plaintiff thought such information was essential to his opposition, he could have immediately served an interrogatory or request for production and asked the Court to continue hearing on this motion pending Defendant's responses to that discovery.[9] He did not do so. Instead, Plaintiff complains that Defendant declined to respond to an informal request during their meet-and-confer discussions before Defendant filed the motion. Notably, Plaintiff cites no authority to suggest Defendant had any obligation to comply with Plaintiff's belated, informal request for discovery. It is Plaintiff's burden to make a *prima facie* showing[10] that the amount in controversy satisfies the $5,000,000 jurisdictional threshold. Merely arguing in an opposition brief that that "such cost is substantial" is not evidence at all, let alone *prima facie* evidence included in the computation of the amount of controversy.[11] Plaintiff has failed to meet his burden of showing that the cost of complying with the injunctive relief he seeks would exceed CAFA's jurisdictional threshold.

### B. Plaintiff Cannot Meet the MMWA Jurisdictional Requirement of at Least 100 Named Plaintiffs

Separately, this Court does not have subject-matter jurisdiction under the MMWA, which provides federal courts with original subject-matter jurisdiction over state law express and implied warranty claims. *See* 15 U.S.C. § 2301 *et seq*.

Like CAFA, the MMWA comes with explicit jurisdictional requirements for the maintenance of a class action lawsuit. Specifically, the MMWA provides that "[no] claim shall be cognizable in a suit brought under [the Act] . . . if the action is brought as a class

---

[9] Better still, Plaintiff could have served the discovery request long ago and moved to compel if he thought CVS's response inadequate.

[10] As the Court noted above, although the party invoking a court's diversity jurisdiction must generally overcome a jurisdictional challenge to the amount in controversy by a preponderance of the evidence, the standard is only *prima facie* showing where, as here, the court declines to hold an evidentiary hearing. *Rancheria v. Bonham*, *supra*, 872 F. Supp. 2d at 968. Plaintiff's claim of jurisdiction fails under either standard.

[11] This is particularly so in light of the fact that Plaintiff lacks standing to assert any claims under Rhode Island law, and his only other claims are limited to the putative California sub-class. Plaintiff does not even *argue* – let alone prove – that the cost of complying with an injunction in California would exceed $5,000,000. Nor can the Court simply speculate that the costs of complying with an injunction on Plaintiff's remaining California claims would necessarily exceed $5,000,000, which is roughly *33 times* CVS's total California sales.

action, and the number of named plaintiffs is less than one hundred." 15 U.S.C. § 2310(d)(3)(C). "Courts interpreting the statutory provision at issue, however, have held that the requirement is satisfied when plaintiffs properly invoke jurisdiction under" CAFA. *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 954 (C.D. Cal. 2012); *see also*, *Wolph v. Acer America Corp.*, No. C 09–01314 JSW, 2009 WL 2969467, *2 (N.D.Cal. Sept. 14, 2009) ("Acer further contends that Plaintiffs are required to identify at least 100 members of the purported class in their Complaint.... [B]ecause Plaintiffs allege an alternative basis for jurisdiction under CAFA, the Court has jurisdiction to adjudicate Plaintiffs' Magnuson–Moss Act claim"); *In re Sony Vaio Computer Notebook Trackpad Litig.*, No. 09–cv–2109 BEN (RBB), 2010 WL 4262191, *4 (S.D.Cal. Oct. 28, 2010) ("[C]ourts considering the viability of a Magnuson–Moss claim following passage of CAFA have found that CAFA jurisdiction includes class actions filed pursuant to Magnuson–Moss that fail to meet the strict jurisdictional requirements of Magnuson–Moss"); *NVIDIA GPU Litig.*, 2009 WL 4020104 at *7 n. 13 ("The Court notes that Plaintiffs satisfy the Magnuson–Moss Act's jurisdictional requirement because they allege jurisdiction based on the Class Action Fairness Act").

In this case, Plaintiff indisputably brings a class action, and he is the only named plaintiff. Plaintiff fails to respond to this argument in its opposition, effectively conceding that his claim under the MMWA hinges on CAFA jurisdiction. Even if subject-matter jurisdiction under CAFA is sufficient to give federal courts jurisdiction over a MMWA claim, the Court does not have jurisdiction under CAFA and lacks any independent jurisdiction under the MMWA. Absent CAFA jurisdiction, Plaintiff cannot pursue a claim under the MMWA as the sole named plaintiff. *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 965 (N.D. Cal. 2013) (holding court lacked subject-matter jurisdiction over MMWA claim in the absence of CAFA jurisdiction where "there is only one named plaintiff").

## IV. CONCLUSION

For the reasons stated above, Plaintiff, a California resident, lacks standing to assert a claim under the RIDTPA or any other provision of Rhode Island law for his California-based transaction, and he cannot rely on that foreign statute's statutory damages provision (or its provision for attorneys' fees and punitive damages) for purposes of calculating the CAFA jurisdictional amount-in-controversy. Absent those statutory damages, Plaintiff fails to make a *prima facie* showing that the amount-in-controversy on his remaining California claims exceeds $5,000,000. Nor has Plaintiff met his burden of demonstrating any likelihood that the costs to CVS of complying with an injunction would exceed $5,000,000. In light of Defendants uncontroverted evidence that the amount in controversy is well below the $5,000,000 jurisdictional requirement, this Court lacks subject-matter jurisdiction under CAFA. Additionally, this Court lacks subject-matter jurisdiction under the MMWA because Plaintiff brought this action as a class action, and

he is the only named plaintiff.   Because Plaintiff asserts no other basis for federal subject-matter jurisdiction, the Court **GRANTS** Defendant's motion to dismiss (Dkt. No. 107), and **DISMISSES** this action **WITHOUT PREJUDICE** to Plaintiff reasserting his claims in a court of competent jurisdiction.

The Pretrial and Jury Trial dates are hereby vacated.

**IT IS SO ORDERED.**